<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **HARP ANDREW AMAR**,<br><br>        Plaintiff,<br><br>        v.<br><br>**CITIGROUP, INC.,** *et al.*,<br><br>        Defendants. | Civil Action No. 25-3784 (ZNQ) (JTQ)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss jointly submitted by Defendants Citigroup Inc., Citigroup Global Market Holdings, Inc., Citigroup Global Markets, Inc., Evercore Group LLC, and E. Thomas Massey, (collectively, "Defendants").  (ECF No. 25.) Defendants filed a brief in support of their Motion.  (ECF No. 25-1.)  Plaintiff Harp Andrew Amar opposed (ECF No. 28.), and Defendants replied.  (ECF No. 29.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Defendants' Motion to Dismiss.

I.      **BACKGROUND AND PROCEDURAL HISTORY**[1]

Plaintiff Harp Andrew Amar ("Plaintiff") was employed by Defendant Citigroup Inc. ("Citi"), Citigroup Global Market Holdings, Inc., and Citigroup Global Markets, Inc., (collectively the "Citi Defendants").  (First Amended Complaint ("FAC") ¶ 16, ECF No. 22.)  While employed with the Citi Defendants, Plaintiff was the Director of Investment Banking.  (*Id.* ¶ 18.)  Plaintiff reported to Defendant E. Thomas Massey ("Massey"), who in turn, reported to Manolo Falcó and Wilheim Schulz.  (*Id.* ¶¶ 16–21.)  Massey, Falcó, and Schulz were, respectively, the Heads of European Mergers and Acquisitions, Investment Banking for Europe, Middle East, and Africa, and Mergers and Acquisitions for Europe, Middle East, and Africa.  (*Id.* ¶¶ 20, 22–23.)  In or around 2015, Plaintiff and Massey ended their employment with the Citi Defendants.  (*Id.* ¶ 24–25.)  Massey began working for Defendant Evercore Group, LLC ("Evercore") and assumed the role of senior managing director.  (*Id.* ¶ 25.)  Plaintiff transitioned out of investment banking and launched a venture capital fund specializing in agricultural technology.  (*Id.* ¶ 26.)

On September 20, 2018, Massey contacted Plaintiff for assistance with raising capital for a digital agriculture start-up of a prospective Evercore client.  (*Id.* ¶ 34.)  Six days later, Massey and Plaintiff met to discuss this venture, and Plaintiff inquired into whether an employment opportunity could be made available to him at Evercore.  (*Id.* ¶¶ 36–37.)  At this meeting, Plaintiff furnished Massey with a presentation ("Presentation") containing strategies for reimagining the traditional investment banking industry coverage model along with innovation-based "megathemes."  (*Id.* ¶ 38.)  Plaintiff avers he explicitly told Massey that his Presentation was

---

[1] The Court accepts the factual allegations in Plaintiff's FAC as true and draws all inferences in the light most favorable to Plaintiff.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

confidential.  (*Id.* ¶ 43.)[2]  Massey reviewed the title page, left the meeting with Plaintiff's Presentation to review, and agreed to meet Plaintiff two weeks later.  (*Id.* ¶ 45–47.)  On October 8, 2018, Plaintiff attempted to coordinate another meeting with Massey, who never responded to Plaintiff's correspondence.  (*Id.* ¶¶ 48–50.)  Plaintiff never again heard from Massey.  (*Id.* ¶ 50.)

Four years later, Citi held its "Investor Day" in March 2022 ("Investor Day 2022").  (*Id.* ¶¶ 51–55.)  At Investor Day 2022, Citi executives made several representations of Citi's intent to: (1)  implement an expansive strategy in which Citi would shift its "investment banking sector focus to be more heavily weighted toward growth companies"; (2) seize opportunities to capitalize on "industries that are converging such as tech[nology] and healthcare"; (3) reorganize its investment banking coverage structures to include the "digital disruption, health and wellness convergence, sustainability revolution, and energy transition"; and (4) implement multiple specific operational and strategic changes to its investment banking coverage model.  (*Id.* ¶¶ 57–59.)  Citi expected that this "High Growth [Investment Banking] Strategy" would "close [the] gaps" in revenue with its top four competitors.  (*Id.* ¶ 61.)  Through these statements, Plaintiff became aware that his Presentation had been misappropriated by the Citi Defendants.  (*Id.* at ¶ 56.)  Plaintiff contends that Massey and Evercore disclosed the information contained in his Presentation with his former Citi colleagues.  (*Id.* ¶¶ 60, 62, 85.)

Plaintiff subsequently began investigating articles, press releases, and internal memoranda relating to Citi's plans for restructuring its investment banking coverage model leading up to Investor Day 2022.  (*Id.* ¶ 63.)  Plaintiff found a news article in *Financial News London* referring

---

[2] In a footnote, the Presentation stated:

> This document is confidential.  By acceptance hereof, each recipient agrees that neither it nor its agents, representatives, directors, or employees will copy, reproduce or distribute to others the Presentation, either in whole or in part, at any time without the prior written consent of [Plaintiff].  The Presentation shall remain the property of [Plaintiff].

(FAC ¶ 44; FAC Ex. A at 2.)

to fragments of information that would later be announced as Citi's "High Growth [Investment Banking] Strategy" on Investor Day 2022. (*Id.* ¶¶ 64–65.) Over the course of months leading up to Investor Day 2022, Citi executives were quoted discussing the "critical megatrends" they would capitalize on and that the new business model was a "mindset shift" and "aggressively focused" on differentiating themselves with competitors. (*Id.* ¶¶ 67–72.) Citi individuals also told *Business Insider* that Citi's key strategies were focused on technology, healthcare, sustainability, and clean energy. (*Id.* ¶ 77.) Citi's statements to the media closely mirrored the content in Plaintiff's Presentation. (*Id.* ¶ 73, 77.)

Plaintiff contacted individuals at Citi in both March and September 2022, informing them: (1) that the Citi's Investor Day 2022 exhibition was derived from the same strategies set forth in his Presentation; (2) the Presentation was confidential; (3) he distributed the Presentation "exclusively" to a former employee; and (4) that former employee was Massey. (*Id.* ¶¶ 74–76, 78.) Plaintiff alleges he copied Massey on these emails, but his communications went unanswered. (*Id.* ¶ 79.) In February 2025, after various attempts to contact Massey, Plaintiff spoke with Massey over the telephone only after masking his caller identification. (*Id.* ¶ 80.) Plaintiff questioned Massey about the Presentation and how the information was given to Citi. (*Id.* ¶ 81.) Massey responded that he did not recall, "effectively den[ying] having any knowledge of [Plaintiff's] Presentation whatsoever." (*Id.* ¶ 82.)

Against that backdrop, Plaintiff brings claims against all Defendants for misappropriation of trade secrets under the common law (Count I), the New Jersey Trade Secrets Act ("NJTSA"), N.J. Stat. Ann. § 56:15-1, *et seq.* (Count II), and the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.* (Count III). (*See generally* FAC.) Plaintiff also seeks recourse against all Defendants for common law unfair competition (Count IV), interference with prospective

economic advantage (Count V), unjust enrichment (Count VI), and civil conspiracy (Count VII). (*Id.*)

Plaintiff filed a Complaint in the Superior Court of New Jersey, Somerset County, on February 28, 2025. (Not. of Removal ¶ 1, ECF No. 1.) Evercore and Massey removed the instant action on May 2, 2025, on the basis of federal question and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332. (*Id.* ¶¶ 15–16.) On July 18, 2025, Plaintiff amended the Complaint. (ECF No. 22.) Defendants jointly moved to dismiss Plaintiff's FAC. (*See* Defs.' Motion to Dismiss, ECF No. 25.) Plaintiff opposed (ECF No. 28), and Defendants replied (ECF No. 29.).

## II.      **SUBJECT MATTER JURISDICTION**

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 because the FAC pleads a federal claim under the DTSA, 18 U.S.C. § 1836. The Court additionally has subject matter jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000.[3]

## III.     **LEGAL STANDARD**

Rule 8(a)(2)[4] requires plaintiffs to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

---

[3] The FAC alleges that Plaintiff is a resident of New Jersey and the Citi Defendants, as well as Evercore, have offices and conduct business in New Jersey. (*See* FAC ¶¶ 1–15) The Notice of Removal, however, indicates the citizenship of the parties as follows: (1) Plaintiff is a resident of New Jersey; (2) Defendant Citigroup is incorporated in Delaware and maintains its principal place of business in New York; (3) Defendant Global Market Holdings, Inc. is incorporated in New York and maintains its principal place of business in New York; (4) Defendant Citigroup Global Markets, Inc. is incorporated in New York and maintains its principal place of business in New York; (5) Defendant Evercore is a limited liability company formed under the laws of Delaware, and its sole member is a citizen of Delaware and New York; and (6) Massey is a resident of London, United Kingdom. (Not. of Removal ¶¶ 7–12, 16.) Despite the FAC pleading otherwise, diversity of citizenship exists here.

[4] All references hereinafter to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

When considering a motion to dismiss, the district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

The district court's role in reviewing the sufficiency of the complaint is simple: it does not determine "whether the plaintiffs will ultimately prevail," but rather "whether they are entitled to offer evidence to support their claims." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.   **DISCUSSION**

Defendants argue that the FAC fails to state a claim for misappropriation of trade secrets, unfair competition, interference with prospective economic advantage, and unjust enrichment. (*See generally* Defs.' Moving Br., ECF No. 25-1) Defendants also assert that Plaintiff's trade secrets claims are time-barred. (*Id.* at 26–30.) Defendants additionally contend the FAC should

be dismissed as to the Citi Defendants for impermissible group pleading and Evercore because it fails to adequately allege vicarious liability. (*Id.* at 23–26, 34–35.) The Court addresses each count of the FAC to determine whether it states a claim for which relief can be granted.

### A. MISAPPROPRIATION OF TRADE SECRETS (COUNTS I, II, III)

Before turning to the merits, the Court considers, as a threshold matter, whether Plaintiff's trade secrets claims are time-barred under the statute of limitations. *Unbeatablesales.com, Inc. v. LJM Supplies Corp.*, Civ. No. 25-5389, 2026 WL 242085, at *2 (D.N.J. Jan. 29, 2026) ("Because the statute of limitations presents a threshold issue, the Court addresses it first.").

#### 1. Statute of Limitations

Under the DTSA,

> [a] civil action [brought by a private party] . . . may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered. For purposes of this subsection, a continuing misappropriation constitutes a single claim of misappropriation.

18 U.S.C. § 1836(d). The NJTSA contains a similar statute of limitations period. It states that

> An action for misappropriation shall be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim.

N.J. Stat. Ann. § 56:15-8. Misappropriation of trade secrets under New Jersey common law has a six-year statute of limitations. *Nasdaq Inc. v. Miami Int'l Holdings, Inc.*, Civ. No. 17-6664, 2023 WL 4740753, at *6 (D.N.J. Jul. 25, 2023); N.J. Stat. Ann. § 2A:14-1.

As this Court has previously observed "the statute of limitations for both the DTSA and the NJTSA explicitly incorporate a discovery rule." *Id.* at *8. "The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where

the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." *Schimdt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (quotation omitted).  The inquiry is "whether the plaintiff was reasonably diligent in discovering his injury." *Id.*  While a plaintiff typically "bears the burden of showing that the discovery rule tolls the statute of limitations," a court, at the motion to dismiss stage, "may not allocate the burden of the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome" a statute of limitations affirmative defense. *Id.* (internal citations omitted).  "[I]n the context of the discovery rule," "when 'the pleading does not reveal when the limitations period began to run . . . the statute of limitations cannot justify Rule 12 dismissal." *Id.* (quoting *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011)).  In other words, the Court may dismiss under Rule 12 only "'if the face of the complaint' demonstrates that the plaintiff's claims are untimely." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (quoting *Schmidt*, 770 F.3d at 249).

Having reviewed the FAC, the Court concludes that Plaintiff brought this action within the applicable statute of limitations period for Counts I through III for the reasons set forth below. Taking the allegations as true, Plaintiff did not have actual notice of his cause of action until Investor Day 2022 on March 2, 2022.  (FAC ¶¶ 51–62.)  Plaintiff additionally alleges that he had left investment banking for a start-up venture and had no reason to keep up to date with Citi's restructuring plans.  (*Id.* at 27–29.)  The Court finds that the discovery rule is applicable here and, construing the FAC in the light most favorable to Plaintiff, the face of the FAC does not demonstrate that Plaintiff's claims are untimely.

The Court rejects Defendants' argument that Plaintiff had constructive notice of his causes of action for misappropriation in April 2021 when the *Financial News London* article was published.  As noted above, Plaintiff had left the field of investment banking.  Moreover,

Defendant's reliance on the 2018 *Business Insider* article discussing Citi's internal plans to restructure is inapposite. Neither the *Financial News London* nor the *Business Insider* articles are integral to Plaintiff's FAC. Rather, as Plaintiff alleged, he found the *Financial News London* and the *Business Insider* articles only after he heard the statements made at Investor Day 2022. (FAC ¶¶ 27–29, 64–65.); *see Schmidt*, 770 F.3d at 249 ("[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited."). Insofar as the allegations of misappropriation in the FAC do not arise from either article, the Court cannot consider them on a Rule 12(b)(6) Motion. *See Schmidt*, 770 F.3d at 249–50 (admonishing district courts for considering a defendant's external documents on a Rule 12(b)(6) Motion).

The Court, accordingly, denies Defendants' Motion to Dismiss Counts I, II, and III as time-barred. The Court next addresses the merits of Plaintiff's trade secrets claims.

### 2.    Stating a Claim for Misappropriation of Trade Secrets[5]

To survive a motion to dismiss under the DTSA, a plaintiff must plead facts that establish: (1) "the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret;" (2) that the trade secret is "related to a product or service used in, or intended for use in, interstate or foreign commerce;" and (3) "the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021). "The essential inquiry for a trade secret is whether the information derives economic value, the information is not readily ascertainable by other means, and the holder

---

[5] "Because the statutory schemes of the NJTSA and DTSA are 'substantially similar as a whole,' courts often combine the analyses of the two schemes." *OWAL, Inc. v. Caregility Corp.*, Civ. No. 21-13407, 2022 WL 890182, at *6 (D.N.J. Mar. 25, 2022) (quoting *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 n.11 (3d Cir. 2021)); *see also Nasdaq Inc. v. Miami Int'l Holdings, Inc.*, Civ. No. 17-6664, 2023 WL 4740753, at *9 (D.N.J. Jul. 25, 2023) (considering plaintiff's DTSA, NJTSA, and New Jersey common law trade secret misappropriation claims "together").

endeavors for it to remain confidential." *Scherer Design Grp., LLC v. Schwartz*, Civ. No. 18-3540, 2018 WL 3613421, at *4 (D.N.J. July 26, 2018), *aff'd sub nom., Scherer Design Grp., LLC v. Ahead Eng'g LLC*, 764 F. App'x 147 (3d Cir. 2019).

At the pleadings state, a plaintiff must provide the defendant with notice "to ascertain at least the boundaries within which the secret lies" and detail sufficient facts that allow the Court to infer a trade secret claim. *Oakwood Lab'ys LLC*, 999 F.3d at 906. Although "a plaintiff need not spell out the details of the trade secret to avoid dismissal[,] . . . the subject matter of the trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade[.]" *Id.* at 906 (quotation marks omitted). "[G]eneric allegations and general references to products or information are insufficient[.]" *Mallet & Co. v. Lacayo*, 16 F.4th 364, 384 n.24 (3d Cir. 2021) (quotation marks omitted).

The Court finds that Plaintiff does not state a claim for misappropriation of trade secrets under the DTSA, NJTSA, or the New Jersey common law. Here, Plaintiff categorizes his entire Presentation—which contains "strategies for reimagining the traditional investment banking industry coverage model along innovation-based 'megathemes'" and "other information"—as a trade secret. (FAC ¶¶ 38, 95.) Plaintiff describes the information within his Presentation as "effective, proprietary[,] . . . extremely profitable," "expansive," "innovation-based," "transformative," and "aggressive." (*Id.* at ¶¶ 38, 57, 59, 61.) Beyond these generalized descriptions, Plaintiff does not provide further detail to "separate [his Presentation] from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade[.]" *Oakwood Lab'ys LLC*, 999 F.3d at 906. Such generic allegations fall short of identifying a protectable trade secret with enough specificity to put Defendants on notice of the claims against them. *See, e.g., Singet Media, Inc. v. L.G. Elecs., U.S.A., Inc.*, Civ. No. 24-4441, 2025 WL

10

3140917, *7 (D.N.J. Nov. 10, 2025) (finding that the plaintiff insufficiently pled that its "customized," "dynamic," "non-standard," and "proprietary" computer networking aspects were trade secrets); *Greenstar Technicians, LLC v. Gouru*, Civ. No. 23-21293, 2025 WL 1311397, at *3 (D.N.J. May 5, 2025) (finding trade secrets based on a "revolutionary Communications Protocol" insufficiently pled); *CLI Interactive, LLC v. Diamond Phil's, LLC*, Civ. No. 22-1602, 2023 WL 1818381, *3–4 (D.N.J. Feb. 8, 2023) (holding that generic categories of "original and unique branding, marketing concepts, art creations, images, photos, educational content; proprietary optimization techniques and data" insufficient to support a trade secrets claim).

While Courts have recognized "the difficulty inherent in articulating what trade secrets [d]efendants may have misappropriated," *Greenstar*, 2025 WL 1311397, at *3, a plaintiff may give "a very precise example by pointing to a particular document . . . [or] specif[ying] the contents of that document as containing trade secrets." *Oakwood Lab'ys LLC*, 999 F.3d at 907. Yet, here, the Court is unsatisfied as to what, exactly, constitutes a trade secret after reviewing Plaintiff's Presentation in combination with the FAC. Although "information will not necessarily be deprived of protection as a trade secret because parts of it are publicly available," *Mallet and Co.*, 14 F.4th at 386, the FAC does not allege that the Presentation, in whole or in part, "consists of a secret advance over common knowledge and practice or [that] it combines publicly available information in a new and secret way." *Fishkin v. Susquehanna Partners, G.P.*, 563 F. Supp. 2d 547, 582 (E.D. Pa. 2008). Plaintiff has therefore not met his burden in providing Defendants with

11

sufficient notice to ascertain the boundaries of his alleged trade secrets. *Oakwood Lab'ys LLC*, 999 F.3d at 906.[6]

As Plaintiff's FAC fails to plead a protectable trade secret, the Court does not reach the remaining elements. Counts I, II, and III are dismissed without prejudice. The Court additionally dismisses Count VII for civil conspiracy without prejudice because Plaintiff has not adequately pled a claim for misappropriation of trade secrets—the predicate tort upon which the conspiracy rests. *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 446 (3d Cir. 2000) (noting "civil conspiracy claims require an underlying tort cause of action.").

**B.      UNFAIR COMPETITION (COUNT IV)**

The common law business tort of unfair competition is "an 'amorphous' area of law . . . generally defined as the 'misappropriation of one's property by another . . . which has some sort of commercial or pecuniary value.'" *ADP, LLC v. Kusins*, 215 A.3d 924, 951 (N.J. Super. Ct. App. Div. 2019) (quoting *Duffy v. Charles Schwab & Co.*, 97 F. Supp. 2d 592, 600 (D.N.J. 2000)); *see also Vorhees v. Tolia*, Civ. No. 16-8208, 2020 WL 1272193, at *11 (D.N.J. Mar. 17, 2020) (explaining that an unfair competition plaintiff must allege two essential elements: (1) "the misappropriation of one's property by another . . . which has some sort of commercial or pecuniary value"; and (2) "bad faith or malicious conduct." (citation and quotation marks omitted)). "The tort broadly focuses on 'fair play,' and aims 'to promote higher ethical standards in the business world.'" *Impact Protective Equip., LLC v. XTech Protective Equip., LLC*, Civ. No. A-0879-19, 2021 WL 1395618, at *9 (N.J. Super. Ct. App. Div. April 14, 2021) (quoting *Ryan v. Carmona*

---

[6] The Court is likewise unconvinced that Plaintiff has plausibly alleged that he took "reasonable measures to keep secret" the Presentation. In conclusory fashion, Plaintiff alleges that he "had exercised extreme care in maintaining the confidentiality of the Presentation, and the secrecy of the information it contained." (FAC ¶ 41.) He may have marked the Presentation with a generic confidentiality notice, but he disclosed it to Massey without requiring—or much less requesting—the execution of a non-disclosure agreement, and he alleges no efforts to re-collect Massey's copy of the Presentation at the end of the meeting or at any time thereafter.

*Bolen Home for Funerals*, 775 A.2d 92, 94–95 (N.J. Super. Ct. App. Div. 2001)). Under New Jersey law, the common law tort of unfair competition protects proprietary information that may not rise to the level of a trade secret. *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1166 (N.J. 2001). The key to determining the misuse of [confidential] information is the relationship of the parties at the time of disclosure, and [the confidential information's] intended use." *Platinum Mgmt., Inc. v. Dahms*, 666 A.2d 1028, 1038 (N.J. Super. Ct. Law Div. 1995) (citing *Zippertubing Co. v. Teleflex, Inc.*, 757 F.2d 1401, 1407–10 (3rd Cir. 1985)).

Although Plaintiff pleads that his Presentation was confidential, (*see* FAC ¶¶ 38, 41, 43), the Court finds that Plaintiff is unable to state a claim for unfair competition predicated on the misappropriation of confidential information. As a preliminary matter, Plaintiff does not allege that he had an agency relationship with any of the Defendants at the time of the disclosure of his Presentation. In recognizing the cause of action for unfair competition based on a misuse of confidential information, the *Lamorte* court drew heavily on principles of agency law, providing that "an agent is subject to a duty to the principal not to use or to communicate information confidentially given him by the principal or acquired by him during the course of or on account of his agency or in violation of his duties as agent, in competition with or to the injury of the principal . . . .'" *Lamorte*, 770 A.2d at 1167 (quoting *Restatement (Second) of Agency* § 395 (1958)). This Court has previously observed that "[a]lthough New Jersey's unfair competition law is 'flexible and elastic,' it is 'not completely boundless.'" *Jevremovic v. Courville*, Civ. No. 22-4969, 2024 WL 4024144, at *10 (D.N.J. Aug. 30, 2024) (quoting *Duffy*, 123 F. Supp. 2d at 815). The circumstances giving rise to this tort thus appear cabined within the context of an agency relationship—specifically, where a former employee improperly takes an employer's confidential information and subsequently uses it to the detriment of the employer. *See Lamorte*, 770 A.2d at 1169 (collecting cases); *Thomas & Betts Corp. v. Richards Mfg. Co.*, 342 F. App'x 754, 760 (3d

13

Cir. 2009) (remanding for the district court to consider whether the misappropriated confidential information was provided to the offending party in the course of his employment); *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 314 (D.N.J. 2013) (observing "[t]his tort tends to arise where an ex-employee uses confidential information to assist a competitor"); *Telmark Packaging Corp., Inc. v. Nutro Lab'ys and Nature's Bounty*, Civ. No. 05-3049, 2008 WL 43954, at *6 (D.N.J. Jan. 2, 2008) (finding unfair competition claim fails where parties did not have an employment or agency relationship); *Platinum Mgmt.*, 666 A.2d at 1038 (finding that a former employee misappropriated confidential customer information and business plans from former employer). Without an agency relationship, Plaintiff's unfair competition claim fails.

Moreover, this Court has previously expressed doubt that an individual plaintiff can sustain a claim for unfair competition given that unfair competition is a "business tort, generally consisting of the misappropriation of a business's property by another business." *Jevremovic*, 2024 WL 4024144, at *10 (quoting *Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Grp., Inc.*, Civ. No. A-3714-07T1, 2010 WL 3772543, *9 (N.J. Super. Ct. App. Div. Sep. 23, 2010)). As Defendants argued, Plaintiff's ability to bring an unfair competition is particular attenuated because he was not in competition with Defendants. *See New Jersey Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc.*, 144 N.J. Super. 411, 427 (N.J. Super. Ct. Ch. Div. 1976) ("Unfair competition presupposes business competition."). Rather, Plaintiff alleges that he "was long removed from the investment banking industry" at the time of the alleged misuse of his Presentation. (FAC ¶ 28.) By his own admission, Plaintiff was therefore not in competition with Defendants, and he cannot plausibly state a claim for unfair competition as an individual.

The Court therefore will dismiss Count IV without prejudice.

14

C.    **INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (COUNT V)**

To state a claim for tortious interference with prospective economic advantage under New Jersey law, a plaintiff must allege: (1) some "reasonable expectation of economic advantage"; (2) the defendant's "interference was done intentionally and with 'malice'"; (3) a reasonable probability that the plaintiff would have obtained the anticipated economic benefit in the absence of interference, and (4) that the interference caused the plaintiff damage. *Printing Mart-Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 37 (N.J. 1989)).

For the reasons set forth below, Plaintiff fails to state a claim for tortious interference with prospective economic advantage. With respect to element one, a plaintiff must plead facts "giving rise to some reasonable expectation of economic advantage" or that he "was in pursuit of business." *Printing Mart*, 563 A.2d at 37 (internal quotations and citations omitted). A tortious interference plaintiff "need not identify multiple lost business opportunities to establish a cause of action for tortious interference, but it must identify one." *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 358 (D.N.J. 2019); *accord Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, 332 F. App'x 787, 790 (3d Cir. 2009) (a tortious interference plaintiff must identify at least a "single, specific customer" that it lost or could have acquired). Here, aside from Plaintiff's inquiry regarding potential employment at Evercore in 2018, (*see* FAC ¶ 37), Plaintiff does not identify the existence of single protectable business venture Plaintiff was pursuing at the time of Defendants' alleged interference. Without an allegation of a single reasonable economic expectation, Plaintiff's allegations fall short of demonstrating a protectable right to do business. *Printing Mart*, 563 A.2d at 38 (observing that "the right protected is plaintiff's right to 'pursue business'").

15

To plead element two, a plaintiff must allege that "the harm was inflicted intentionally and without justification or excuse." *Id.* at 37. "The relevant inquiry is whether the defendant's conduct was sanctioned by the 'rules of the game.'" *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, Civ. No. 10-0453, 2010 WL 5239238, at * 6 (D.N.J. Dec. 16, 2010) (quoting *id*. at 40). "[T]he 'line clearly is drawn at conduct that is fraudulent, dishonest, or illegal.'" *Som Maior Audio E Video, Ltda. v. Creston Elecs., Inc.*, Civ. No. 20-19864, 2021 WL 5770259, at *4 (D.N.J. Dec. 3, 2021) (quoting *Lamorte*, 770 A.2d at 1171). Plaintiff pleads no facts to plausibly suggest that Defendants engaged in fraudulent, dishonest, or illegal acts without justification or excuse. To the contrary, Plaintiff's allegations of Defendants' wrongdoing rest solely upon information and belief. (FAC ¶¶ 84–85, 87–88.)

As to the third and fourth elements, because Plaintiff has not demonstrated a reasonable, prospective economic venture, Plaintiff has not pled that Defendants' alleged actions caused a loss of that potential advantage or that he was damaged as a result of Defendants' interference. Rather, Plaintiff's FAC "presumes that [a] yet to be identified advantage[ ] will be interfered with at some future point in time." *Engineered Framing Sys., Inc. v. Vescom Structures, Inc.*, No. 05-1461, 2005 WL 8174971, at *4 (D.N.J. Nov. 1, 2005). Such allegations are insufficient to demonstrate causation.

The Court accordingly will dismiss Count V without prejudice.

### D.      UNJUST ENRICHMENT (COUNT VI)

To state a claim for unjust enrichment in New Jersey, a plaintiff must plead that "(1) the 'defendant[s] received a benefit' from the plaintiff; (2) 'retention of that benefit [by the defendants] without payment would be unjust'; (3) plaintiff 'expected remuneration from defendant at the time [he or she] performed or conferred a benefit on defendant[s]'; and (4) the 'failure of remuneration enriched defendant[s] beyond [their] contractual rights.'" *Semeran v. Blackberry Corp.*, Civ. No.

15-0750, 2016 WL 406339, at *6 (D.N.J. Feb. 2, 2016) (quoting *VRG Corp. v. GKN Realty Co.*, 641 A.2d 519, 526 (N.J. 1994)).

Plaintiff fails to state a claim for unjust enrichment. With respect to Massey and Evercore, Plaintiff alleges that he furnished his Presentation to Massey to leverage his inquiry for employment with Evercore, hoping that Massey or Evercore would assess his candidacy. (FAC ¶¶ 37–38, 100, 125.) Yet, no facts are pled to suggest that Massey or Evercore intended to hire, pay, or provide commission to Plaintiff at the time Plaintiff gave his Presentation to Massey. *See InfuCare Rx, v. Roy*, Civ. No. 22-6342, 2024 WL 4542226, at *11 (D.N.J. Oct. 22, 2024) ("For this claim, a plaintiff must 'show that [he] expected remuneration from the defendant *at the time* [he] performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" (emphasis added) (quoting *Hughes v. Panasonic Consumer Elecs. Co.*, Civ. No. 10-846, 2011 WL 2976839, at *26 (D.N.J. July 21, 2011)). In other words, there are no pleadings in the FAC to suggest a quasi-contractual relationship existed between Plaintiff, Massey, and Evercore in exchange for the benefit Plaintiff conferred upon Massey and Evercore.

Moreover, Plaintiff does not plead any relationship between himself and the Citi Defendants when Massey allegedly gave the Presentation to the Citi Defendants. *See Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998) ("[I]t is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis of an unjust enrichment claim."); *Bedi v. BMW of N. Am., LLC*, Civ. No. 15-1898, 2016 WL 324950, at *5 (D.N.J. Jan. 27, 2016) ("[T]here must be a direct relationship to assert an unjust enrichment claim."). Given the attenuated relationship between himself and the Citi Defendants, Plaintiff cannot state a claim for unjust enrichment against the Citi Defendants.

The Court therefore will dismiss Count VI without prejudice.

17

In sum, the Court dismisses Counts I through VI of the FAC without prejudice for failure to state a claim for which relief can be granted.  Having arrived at this conclusion, the Court briefly addresses the additional deficiencies in the FAC.  First, the Court is not satisfied that Plaintiff plausibly alleged that Massey acted within the scope of his employment at the time he conducted the tortious act of misappropriation by giving Plaintiff's Presentation to the Citi Defendants such that Evercore can be vicariously liable for Massey's conduct.  *See Carter v. Reynolds*, 815 A.2d 460, 463 (N.J. 2003) (explaining that to plausibly plead vicarious liability against an employer, a plaintiff must allege that the employee was acting within the scope of his or her employment at the time the tortious conduct occurred (citing *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 462 (1993)); *Migliore by Migliore v. Vision Solar LLC*, 160 F.4th 79, 86 (3d Cir. 2025) (noting that to survive a motion to dismiss, "a plaintiff must allege facts sufficient to make it plausible the primary wrongdoer was the defendant's agent"); *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 117–18 (3d Cir. 2013) (vicarious liability is subject to the *Twombly* and *Iqbal* pleading standard).  Second, Plaintiff's allegations as to the Citi Defendants are impermissible group pleadings.  Despite Plaintiff's argument to the contrary, the group pleadings in the FAC fail to inferentially implicate Citigroup Global Market Holdings, Inc. and Citigroup Global Markets, Inc., individually, such that they are on notice of the claims against them.  *See D.W. by Renaud v. N.J. Div. of Child Prot. & Permanency*, Civ. No. 21-15789, 2023 WL 3626266, at *5 (D.N.J. May 24, 2023) (finding that a plaintiff's use of group pleadings was permissible so long as the court could determine that the "group pleadings . . . inferentially implicate[s]" the individual defendants such that the individual defendants "are on notice of the allegations against them").

## V.      <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion to Dismiss will be GRANTED.  The First Amended Complaint will be DISMISSED WITHOUT PREJUDICE for failure to state a claim for which relief may be granted.  The Court will grant Plaintiff leave to file a Second Amended Complaint, limited to addressing the deficiencies set forth in this Opinion within thirty days.  If no Second Amended Complaint is filed by that deadline or Plaintiff fails to remedy the deficiencies set forth herein, Plaintiff's claims may be dismissed with prejudice.  An appropriate Order will follow.

Date: April 27, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
